# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| GALESBURG 67, LLC and DM PARTNERS, | ) ) ) | |
| Plaintiffs, | ) ) | No. 15-cv-5650 |
| v. | ) ) | Judge Ronald A. Guzmán |
| NORTHWEST TELEVISION, INC., and BRUCE FOX, | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

The Court denies Defendants' Joint Motion to Dismiss First Amended Complaint [36].

## STATEMENT[1]

This case concerns the breakdown of a cooperative strategy to obtain a television broadcasting license from the Federal Communications Commission ("FCC"). In the original complaint, Galesburg 67, LLC and DM Partners ("Plaintiffs") asserted claims for breach of contract, fraudulent transfer, and unjust enrichment. Particularly, Plaintiffs claimed that there existed a valid contract between them and Northwest, according to which they would facilitate the issuance of a broadcast license from the FCC to Northwest, and Northwest would pay them roughly one million dollars in exchange. The FCC issued the license to Northwest in 2012, but Northwest never paid up (the breach). Northwest then sold the license and allegedly transferred the profit to its president, defendant Bruce Fox (the fraudulent transfer). Taken together, these

---

[1] Because the Court detailed the facts of this case in its prior ruling on Defendants' first motion to dismiss, (*See* 11/3/15 Mem. Op. & Order [Dkt. # 32].) we will only briefly summarize those facts necessary to deciding the instant motion.

circumstances show that Plaintiffs conferred a benefit on Northwest and Fox (collectively "Defendants") but received nothing in return (the unjust enrichment).

The Court dismissed the claims for fraudulent transfer and unjust enrichment, however, because (1) the allegations of fraud were too vague to pass muster under Federal Rule of Civil Procedure 9(b), and (2) the allegations of unjust enrichment failed to comply with this district's pleading standards, which require breach of contract and unjust enrichment to be pleaded in the alternative. Accordingly, Plaintiffs filed an amended complaint seeking to remedy these issues, adding further detail to Count II, and pleading Count III in the alternative. (See Am. Compl. [Dkt. # 33] at 3-7.) Defendants, nonetheless, insist that the amended complaint still fails to state a claim and further suggest that this case should be transferred to the District of Florida.

## **LEGAL STANDARD**

Rule 12(b)(6) permits a party to move for dismissal where a complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12. To state a claim, a complaint need only contain a short and plain statement showing that the plaintiff is entitled to relief. *See EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). In ruling on a 12(b)(6) motion, the Court must accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009). A complaint may survive a motion to dismiss under Rule 12(b)(6) if it contains sufficient factual allegations to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Specific facts are not

necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (ellipsis in original).

Similarly, in deciding a motion to dismiss for improper venue under Rule 12(b)(3), all allegations in the complaint are taken as true, and all reasonable inferences are drawn in the plaintiff's favor. *See Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 806 (7th Cir 2011).

## DISCUSSION

**I. Venue[2]**

Defendants broadly claim that the complaint lacks sufficient factual allegations that would suggest that venue is proper in the Northern District of Illinois. But this argument flies in the face of the law, the clear allegations in the complaint, and Defendants' knowledge of the case.

Above all, Defendants have waived their right to challenge venue by failing to raise it in their original responsive pleadings.[3] *See* Fed. R. Civ. P. 12(h)(1)(A) (explaining that a party waives a defense or objection raised in a successive Rule 12 motion if that defense or objection could have been raised in the prior motion). The discussion could end here, but the Court finds it necessary to explicate the further deficiencies in Defendants' argument.

To the extent that Defendants suggest the complaint is improperly pleaded, they are mistaken: it plainly states, on the first page, that "[v]enue is proper in this District under the provisions of 28 U.S.C. § 1391 in that a substantial part of the events or omissions giving rise to

---

[2] Although Plaintiffs interpreted Defendants' venue argument as twofold, a venue challenge and a request for transfer under the doctrine of *forum non conveniens*, Defendants have made clear in their reply brief that they are not requesting transfer under 28 U.S.C. § 1404. (*See* Defs.' Reply [Dkt. # 51, Ex. A] at 1.) Thus, the Court need not address the transfer concerns raised by Plaintiffs.

[3] Northwest filed an answer, whereas Fox filed the original motion to dismiss. Neither contests venue, however.

3

the claims occurred in this District." (Am. Compl. [Dkt. # 33] ¶2.) This is all that is required on the face of a complaint, insofar as venue is concerned. *See Stickland v. Trion Grp., Inc.*, 463 F. Supp. 2d 921, 924 (E.D. Wis. 2006) (explaining that unlike jurisdiction, it is not incumbent upon plaintiffs to allege the propriety of venue with specific facts; that burden arises only when venue is challenged).

Furthermore, even if Defendants' position were cognizable, any uncertainty about the propriety of venue as alleged in the amended complaint could have been resolved by looking to the obvious: the contracts that are referenced in the amended complaint, which are also attached as exhibits, plainly pertain to a deal to get broadcast license and construct a television station in Illinois. (*See* Settlement Agreements, [Dkt. # 33, Exs. A, B].) These facts, by themselves, are sufficient to establish that venue is proper in the Northern District of Illinois. *See Master Tech Prods., Inc. v. Smith*, 181 F. Supp. 2d 910, 914 (N.D. Ill. 2002) ("The test for venue . . . looks not to the defendant's contacts with the forum, but the location of the events giving rise to the cause of action. . . . To [qualify this district as a proper venue], it is enough to establish that the events that took place in Illinois were part of the historical predicate for the instant suit.") (citation and quotations omitted).

Perhaps Defendants' position would be more understandable if this were the beginning of the case and the first motion to dismiss. But it is not. Unmistakably, this case is — and always has been — about a deal to create a television station in Illinois gone wrong. To be sure, the amended complaint does not spell out explicitly how this dispute is related to Illinois (beyond the general allegation of venue above), but the original complaint did so quite clearly, (*see* Compl. [Dkt. # 1] at 1-2), and Defendants cannot presently feign ignorance of the nature of the case simply because the amended complaint was drafted with less detail than the original (at least

4

with respect to venue). Their venue challenge is thus, at best, a poor attempt at gamesmanship, and, at worst, a frivolous argument made in bad faith.

## II.     Sufficiency of the Complaint

### A.     Count I – Breach of Contract

Turning to the sufficiency of the complaint, Plaintiffs allege in Count I that there existed a valid, binding contract between the parties (the Settlement Agreements), that Plaintiffs met their obligations under the contract, and that Defendants breached the contract by failing to pay them upon receiving the FCC license, thereby causing Plaintiffs damages. These allegations sufficiently state a claim for breach of contract under Illinois law.[4] *See Prima Tek II, L.L.C. v. Klerk's Plastic Indus.*, 525 F.3d 533, 538-39 (7th Cir. 2008). Nonetheless, Defendants insist that Count I must be dismissed for failure to comply with Rule 9(c), which provides as follows:

> **Conditions Precedent.** In pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed. But when denying that a condition precedent has occurred or been performed, a party must do so with particularity.

Fed. R. Civ. P. 9(c). Rule 9(c) applies here, according to Defendants, because the Settlement Agreements each contain sections entitled "conditions precedent," which detail certain events that must happen in order to trigger Northwest's obligation to pay Plaintiffs, such as the FCC issuing a broadcast license to Northwest and Northwest securing all state and local approvals necessary for construction of the television station. Yet, notwithstanding these provisions, the amended complaint does not allege that any of the enumerated conditions precedent were satisfied, which requires dismissal.

---

[4] Both contracts contain an Illinois choice-of-law clause. Neither party has raised any choice of law concerns, so the Court will assume that Illinois law applies.

While Defendants are correct that the complaint does not allege the performance of the conditions precedent detailed in the Settlement Agreements, their argument fails to credit paragraph ten of the amended complaint, which states that "the parties orally modified the Contracts to require cash payments from Northwest to [Plaintiffs] immediately upon the issuance of the Broadcast License." (Am. Compl. [Dkt. # 33] ¶ 10.) Given that Illinois law permits subsequent oral modifications to a contract, *see U.S. Neurosurgical, Inc. v. City of Chi.*, 572 F.3d 325, 332 (7th Cir. 2009), and that the Court must accept the allegations in paragraph 10 as true at this stage of the proceedings, it follows that Rule 9(c) poses no problems for Count I: according to paragraph ten, the issuance of the FCC license was the only condition precedent to Northwest's obligation to pay, and according to paragraph eleven, that license was issued in 2012. (*See* Am. Compl. ¶¶ 10-11.) As such, the amended complaint alleges the satisfaction of the pertinent condition precedent and otherwise states the elements for breach of contract under Illinois law. The Court therefore has no basis to dismiss Count I at this time.

### B.  Count II – Illinois Fraudulent Transfer Act

Next, Defendants contend that Count II (again) fails to meet Rule 9(b)'s particular fraud-pleading standards. In its prior opinion, the Court admonished Plaintiffs that Count II of the original complaint lacked factual allegations that would support an inference of Northwest's fraudulent intent under the Illinois Fraudulent Transfer Act ("FTA"), 740 Ill. Comp. Stat. §§ 160/1-160/12.[5] *See* Fed. R. Civ. P. 9(b) (requiring that allegations of fraud be stated with particularity); *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 923 (7th Cir. 1992) (explaining

---

[5] The FTA provides that a transfer by a debtor is fraudulent if the debtor made the transfer with "actual intent to hinder, delay, or defraud" any creditors. *Id.* § 160/5. It goes on to list eleven "badges of fraud" that should be considered when determining fraudulent intent, such as whether the pertinent transfer was made (a) while the debtor was insolvent, (b) to an "insider," (c) in lieu of a lawsuit, or (d) shortly before or after a substantial debt was incurred. *Id.*

the Rule 9(b) standard as requiring a plaintiff to state the "who, what, when, and where" of the fraud). Particularly, the Court explained that Count II failed to provide a factual basis for inferring that the transfer was made "with actual intent to hinder, delay, or defraud [Plaintiff]." (740 Ill. Comp. Stat. Ann. 160/5(a)(1)).

> As amended, Count II reads as follows:
>
> 16. On October 15, 2012, Northwest sold the Broadcast License to [a third party] for [$1,125,000.00].
>
> 17. Upon information and belief, in spite of its indebtedness to [Plaintiffs], Northwest then proceeded to distribute the sale proceeds to its shareholders, including, without limitation, Fox.

(Am. Compl. [Dkt. # 33] ¶¶ 16-17.) The amended complaint then states, along the lines of the FTA's badges of fraud, that the alleged distribution from Northwest to Fox was made with fraudulent intent because (1) the transfer was made to an "insider," since Fox is Northwest's president, (2) prior to the transfer, Defendants knew or should have known that this lawsuit was imminent, (3) "upon information and belief," the transfer was of substantially all of Northwest's assets, and (4) Northwest became insolvent at or around the time of making the transfer to Fox. (*Id.* ¶ 18.)

This version of Count II is surely better than its predecessor,[6] yet still the very act that Plaintiffs claim to constitute the fraud – transfer of the proceeds from the corporation to plaintiff - is made upon information and belief. *See Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 948 (7th Cir. 2013) ("We frown on making allegations 'on information and belief' in the fraud

---

[6] The entirety of the original Count II reads as follows: "The distribution to Defendant Fox was made at a time when Northwest was insolvent and with actual intent to hinder, delay, or defraud Northwest's creditors, Galesburg and DM, and thus constitutes a fraudulent transfer of Northwest's assets to Defendant Fox." (Compl. [Dkt. # 1] ¶ 17.)

7

context and generally find that such claims do not meet Rule 9(b)'s particularity requirement.").[7] This is puzzling because Paragraph 18 of the First Amended Complaint also states affirmatively (not on information and belief) that Northwest's intent in making the transfer to Fox was to hinder, delay or defraud Northwest's creditors, including Galesburg and DM; that the transfer was made to an insider as Fox is the president of Northwest, that prior to the transfer the Defendants knew or should have known that this lawsuit was imminent; that Northwest became insolvent at or around the time of making the transfer to Fox and that the transfer was made shortly after the debt to Galesburg and DM was incurred by Northwest. One wonders how a party can know the intent with which a transfer was made if the transfer itself is only believed to have occurred. Clearly, this is poor draftsmanship. Nevertheless, we are at the pleading stage and the complaint does state sufficient facts to pass muster at this stage. We are told, at least in relative terms, when the transfer took place – at around the time Northwest became insolvent. The complaint is clear as to what was transferred as well as who made the fraudulent transfer and who received funds were transferred to. The complaint paints a clear picture of the alleged fraudulent transaction: Northwest is alleged to have sold the license and then disbursed the proceeds to its president shortly before it became insolvent for the purpose and with the intent of hindering plaintiff's ability to collect on the indebtedness alleged in the complaint. Northwest is sufficiently apprised of the parameters of the fraudulent transfer allegation.

        Accordingly, the motion to dismiss Count II is denied.

---

[7] While it is true that allegations of fraud based on information and belief may stand where the defendant has sole access to the facts underlying the purported fraud, even in these situations a plaintiff must still allege "facts that form the basis for the belief [that fraud has occurred]." *Interlease Aviation Inv'rs II (Aloha) L.L.C. v. Vanguard Airlines, Inc.*, 254 F. Supp. 2d 1028, 1040 (N.D. Ill. 2003).

## C. Count III – Unjust Enrichment

Defendants' last challenge, much like their venue argument, is frivolous and underdeveloped. Their entire "argument" is contained in the following two sentences: "Count III . . . alleges a claim for unjust enrichment against both Defendants. As previously detailed by the Court at pages 6 and 7 of its November 3, 2015 Memorandum Opinion and Order, Count III should be dismissed, with prejudice, as to both Defendants, for the reasons previously articulated." (Defs.' Br. [Dkt # 37] at 5.) This passage is the posterchild for waiver. *See Judge v. Quinn*, 612 F.3d 537, 557 (7th Cir. 2010) ("We have made clear in the past that it is not the obligation of this court to research and construct legal arguments open to parties, especially when they are represented by counsel, and we have warned that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived.") (internal quotation marks and alterations omitted); *Milligan v. Bd. of Trs. of S. Ill. Univ.*, 686 F.3d 378, 386 (7th Cir. 2012) ("[T]he forfeiture doctrine applies not only to a litigant's failure to raise a general argument . . . but also to a litigant's failure to advance a specific point in support of a general argument."). In any event, the primary issue with the former version of Count III was that it was not pleaded in the alternative, a defect cured by the amended complaint. As such, Defendants have no leg to stand on, and the Court therefore declines to dismiss Count III.[8]

## CONCLUSION

For the reasons set forth above, the Court denies Defendants' Joint Motion to Dismiss First Amended Complaint [36].

---

[8] For the sake of thoroughness, the Court notes that Count III states a plausible claim for unjust enrichment against both Fox and Northwest. As amended, it alleges that Defendants retained a benefit from Plaintiffs (the Broadcast License), that this benefit was conferred at Plaintiffs' expense, and that Defendants' retention of that benefit violates fundamental principles of fairness. (Am. Compl. [Dkt. # 33] ¶¶ 22-26.) This is all that is required under Illinois law. *See HPI Health Care Svcs., Inc. v. Mt. Vernon Hosp., Inc.*, 525 N.E.2d 672, 675 (Ill. 1989).

**SO ORDERED.** **ENTERED: April 18, 2016**

_____
**HON. RONALD A. GUZMÁN**
**United States District Judge**